**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. Case 1:21-cv-02672-STV

JENNIFER L. COOPER, EUGENE DIXON, FRANCIS J. CIZMAR, ANNA PENNALA, KATHLEEN DAAVETTILA, CYNTHIA BRUNELL, KARYN CHOPJIAN, AND ABBIE HELMINEN, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

        Plaintiffs,

v.

US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., DOMINION VOTING SYSTEMS CORPORATION, and HAMILTON PLACE STRATEGIES, LLC,

        Defendants.

**HAMILTON PLACE STRATEGIES, LLC'S MOTION TO DISMISS**
**THE FIRST AMENDED CLASS ACTION COMPLAINT**

Pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure, Defendant Hamilton Place Strategies, LLC ("HPS"), by and through its undersigned counsel, respectfully moves to dismiss this case, and in support, states as follows:

**INTRODUCTION**

Plaintiffs have taken a meritless lawsuit against Defendants US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") and compounded it by amending the complaint to add HPS as a defendant. HPS is a public relations firm and limited liability company organized under the laws of the State of Delaware with its principal place of business in Washington, D.C. (Am. Compl., ¶ 33.) Dominion hired HPS to aid Dominion as it dealt with unpresented misinformation following the

2020 election.  (*See id.* ¶ 4.)  Although HPS merely assisted Dominion in correcting the public record, Plaintiffs nevertheless allege that HPS is liable for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") and for civil conspiracy.[1]  Plaintiffs specifically allege that they have suffered injuries because Clare Locke, LLP ("Clare Locke"), on behalf of Dominion, sent them document preservation letters.  HPS's name is nowhere to be found on these letters, (*see id.*, Exs. 2, 4–5, 8, 10, 12–13, 16), and the First Amended Class Action Complaint (the "Amended Complaint") contains only conclusory allegations connecting HPS to the letters.

The flaws with the Amended Complaint are numerous.  First and foremost, Plaintiffs cannot establish that this Court has personal jurisdiction over HPS.  Plaintiffs, all eight of whom are domiciled in Michigan and received the document preservation letters in Michigan, have nonetheless filed suit in the District of Colorado.  (*See id.* ¶¶ 16–28.)  The only alleged connection to Colorado is that Defendants Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation, two of the three Dominion Defendants, have their principal place of business in Denver.  (*Id.* ¶¶ 30–31.)  HPS and Clare Locke are located in other states.  *(See id.* ¶ 33.)  Therefore, Plaintiffs' personal jurisdiction theory must be that HPS can be sued in federal court in Colorado by plaintiffs from an entirely different state involving conduct directed at residents in that different state because HPS assisted companies based in Colorado in correcting misinformation percolating nationwide.  This theory is directly contrary to basic personal jurisdiction concepts and must be disregarded.

Moreover, for the reasons described in Dominion's Motion to Dismiss and below,

---

[1] Plaintiffs assert only two of their four claims for relief against HPS.  Counts II and III are asserted against Dominion only.  (*See id.* ¶¶ 99–108, 119–22.)

Plaintiffs' claims are non-justiciable and their allegations fail to state a claim against any Defendant, including HPS. Simply put, HPS's actions to aid Dominion in correcting misinformation and restoring its name are lawful, do not give rise to a lawsuit, and certainly are not actionable under any of Plaintiffs' facially absurd RICO and civil conspiracy claims. The Amended Complaint must be dismissed in its entirety, with prejudice.[2]

## BACKGROUND

HPS adopts the background stated in Dominion's Motion to Dismiss. (*See* ECF No. 40, at 3–6.) Additionally, HPS highlights that the vast majority of the allegations in the Amended Complaint do not mention HPS whatsoever, including the alleged unlawful action (*i.e.*, the sending of document preservation letters). Although Plaintiffs allege that the document preservations letters came from Dominion, Clare Locke, ***and*** HPS, (*see* Am. Compl., ¶¶ 29, 78, 104), HPS's name is not on the letters. And the Amended Complaint does not establish a connection between HPS and these letters. Rather, Plaintiffs allege that HPS developed a "publicity campaign" on behalf of Dominion that created "a national environment of intimidation and fear regarding concerns about the 2020 General Election and about election integrity and security generally, such that anyone who watched the news or was a part of the public debate on these topics would self-regulate and censor their own legitimate speech for fear of drawing a meritless billion-dollar retaliatory lawsuit." (*See id.* ¶¶ 8, 15, 78.) The absence of allegations

---

[2] Although not addressed in this motion, even if this case was justiciable and Plaintiffs could state a claim for relief, the class allegations should be stricken under Rules 23(c)(1)(A) and 23(d)(1)(D) because, for example, common issues do not predominate. Not only are Plaintiffs' alleged damages unclear, but proving such diverse and personal damages as emotional distress and mental anguish must be assessed on an individual basis. HPS reserves the right to move to strike the class allegations in a separate motion.

connecting HPS to the letters makes sense.  After all, HPS is not a law firm that files litigation, nor does it send pre-litigation letters.

This distinction is important.  Plaintiffs do not allege that they suffered any injury stemming from HPS's purported "publicity campaign."  The Amended Complaint instead alleges that Plaintiffs were injured because of what HPS conveyed, on behalf of Dominion, in the document preservation letters.  (*See id.* ¶¶ 16–28.)  The alleged unlawful conduct thus was the sending of the document preservation letters.  (*See id.* ¶¶ 104, 107, 113, 118, 122; *see also id.* ¶ 91 (alleging a nationwide class for "[a]ll persons who received Letters from non–party co–conspirator Clare Locke on behalf of their client, Dominion, from November 4, 2020 to the present").)  Plaintiffs do *not* allege that they self-regulated or censored their speech because of HPS's purported "publicity campaign."

## LEGAL STANDARD

Rule 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1).  To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction under Rule 12(b)(1).  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Similarly, under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1417 (10th Cir. 1988).  The plaintiff can satisfy its burden by making a prima facie showing.  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The court will accept the well-pleaded allegations of the complaint as true in determining whether the plaintiff has made a prima facie showing that personal jurisdiction exists.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057

(10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further. *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 931 (10th Cir. 2015). Thus, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## ARGUMENT

### I.  This Court Lacks Personal Jurisdiction over HPS.

This Court lacks personal jurisdiction over HPS because hailing HPS, a corporation located elsewhere, into federal court in Colorado to defend against claims brought by Plaintiffs domiciled in Michigan for actions taken outside of Colorado would violate due process.

A district court may not exercise jurisdiction over an out-of-state defendant unless the plaintiff establishes: (i) that the state in which the court is based would allow the exercise of jurisdiction; and (ii) that exercising jurisdiction would not offend the Due Process Clause of the Fourteenth Amendment. *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019). Because Colorado asserts jurisdiction over out-of-state defendants to the maximum extent allowed under the Due Process Clause, the two inquiries are the same here. *Id.*

Due process requires a nonresident to have "certain minimum contacts . . . such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This inquiry "focuses on the relationship among 'the defendant, the forum, and the litigation.'" *Id*. at 284 (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984)). Thus, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. Furthermore, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id*. at 286 (quotation omitted).

This "minimum contacts" standard can be met in two ways. First, a court may exercise specific jurisdiction over a nonresident defendant "if [it] has purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted). Specifically, there "must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, not only must Plaintiffs prove an activity or occurrence by the defendant "in" Colorado, they must also show that its suit-related activities "are significant and purposefully directed by the defendant at residents" in Colorado. *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1276, 1271 (Colo. 2002). This "arising out of" prong of the specific jurisdiction test requires that "the actions of the defendant giving rise to the

litigation must have created a 'substantial connection' with the forum state." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1194 (Colo. 2004); *see also Bristol-Myers*, 137 S. Ct. at 1781 (reasoning that if plaintiff's suit does not arise out of or relate to defendant's purposeful contacts with the forum state, then "specific jurisdiction is lacking regardless of the extent of [the] defendant's unconnected activities in the State"). In other words, the test is whether "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum." *Walden*, 571 U.S. at 284; *see also id.* at 290 (explaining that mere "injury to a forum resident is not a sufficient connection to the forum").

Second, where a court's exercise of jurisdiction does not directly arise from or relate to a defendant's forum-related activities, the court may nevertheless maintain general personal jurisdiction over the nonresident defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415–16 (1984). But to be subject to general jurisdiction in a forum state, the defendant's affiliations with that state must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations and citation omitted).

Here, Plaintiffs have pled no facts that could establish why a federal court in Colorado would have either specific or general jurisdiction over HPS. Specific jurisdiction cannot be satisfied because the Amended Complaint is devoid of any allegations of suit-related activities by HPS that "are significant and purposefully directed by [HPS] at residents" in Colorado. The ***only*** Colorado-specific connection Plaintiffs allege is that HPS has done work on behalf of Dominion's Colorado entities. (*See, e.g.*, Am. Compl., ¶¶ 4, 8, 81.) But simply contracting with Dominion to provide public relations services is not enough to establish this Court's exercise of

personal jurisdiction over HPS.  *See Walker v. Women's Pro. Rodeo Assoc., Inc.*, 498 P.3d 648, 662 (Colo. App. 2021) ("Applying the first step of the minimum contacts analysis for specific jurisdiction, a nonresident defendant is not subject to personal jurisdiction in Colorado solely because the defendant entered into a contract with a Colorado resident.").

The fact that HPS acted on Dominion's behalf to assist with public relations is likewise insufficient.  Although Plaintiffs allege that "HPS h[as] not acted merely as [an] agent[ ] or instrument[ ] of Dominion, but h[as] instead acted as [an] independent entit[y] whose conduct . . . rises to the level of active participation in Dominion's wrongdoing," (Am. Compl., ¶ 103), this conclusory assertion has no factual support.  Indeed, Plaintiffs' allegations show the opposite—that HPS has ***only*** acted on behalf of Dominion as its agent.  (*See id.* ¶¶ 4 n.2, 84(c) n.100.)  While claiming HPS acted on its own accord in conducting this national media campaign, Plaintiffs simultaneously allege that HPS "appeared on television shows for interviews . . . ***on Dominion's behalf***."  (*Id.* ¶ 4 (emphasis added).)  HPS would have no involvement with any of the allegations in the Complaint but for its contractual relationship with Dominion.  Exercising personal jurisdiction over HPS in Colorado simply because HPS is the agent of Colorado corporations does not comport with due process and does not bestow specific jurisdiction.  *See, e.g.*, *Wilbourn v. Mostek Corp.*, 537 F. Supp. 302, 305 (D. Colo. 1982) ("An agent or employee will be subject to personal jurisdiction if he engages in personal, as opposed to corporate, business activities in the forum state."); *First Nat. Bank of Minneapolis v. White*, 420 F. Supp. 1331, 1336 (D. Minn. 1976) ("[T]he actions of an agent acting for a disclosed principal bind only the principal and not the agent, subjecting only the principal to jurisdiction on

the basis of contacts with the forum."); *Williams v. Gen. Motors Corp.*, 573 F. Supp. 577, 579 (E.D. Ark. 1983) (same).

Moreover, the fact that the document preservation letters at issue in this case were sent by Clare Locke on behalf of Dominion, including its two Colorado entities, does not establish that *HPS* has sufficient contacts with Colorado. Not only does HPS's name not appear on the letters, but even if HPS was involved in sending these letters (and the Amended Complaint contains no allegations establishing that it was), this activity alone is insufficient to establish HPS purposefully availed itself of the privilege of conducting activities in Colorado. Courts in the Tenth Circuit and other jurisdictions have held that they do not have personal jurisdiction over firms that sent prelitigation letters on behalf of a company to plaintiffs located *within* the forum state. *See, e.g.*, *Tigerstripe Paintball, LLC v. Heckler & Koch, Inc.*, No. 1:09-CV-57-TC, 2010 WL 414471, at *4 (D. Utah Jan. 28, 2010) (holding that investigative and consulting firm that sent a cease-and-desist letter on behalf of company to plaintiffs in forum state could "not be characterized as purposely availing itself of the privilege of conducting activities in the [forum] State" and, therefore, it did not have personal jurisdiction over the consulting company). The facts here establish an even more tenuous relationship between HPS and Colorado. Plaintiffs are located *outside* the forum state, (*see* Am. Compl., ¶¶ 16–28), and there are no allegations that any document preservation was sent on Dominion's behalf to anyone in Colorado. And the letters were sent by Clare Locke, which is a limited liability partnership located in Virginia. (*Id.* ¶ 34.) Clare Locke does not have a Colorado office, and thus the letters were not even sent from Colorado.

The only allegations in the Amended Complaint expressly concerning HPS—the allegations addressing HPS's public relations work on Dominion's behalf—are insufficient to establish personal jurisdiction. The two news sources Plaintiffs point to in discussing the alleged media campaign—CNN and the Washington Post—are national media outlets. (*See id.* ¶¶ 4 n.2, 84(c) n.100.) In analogous circumstances, courts across the country have held that the mere placement of advertisements in national publications is insufficient to establish personal jurisdiction over a defendant. *See, e.g.*, *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op*, 17 F.3d 1302, 1305 (10th Cir. 1994) ("We have previously held that evidence of mere placement of advertisements in nationally distributed papers or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser." (citing *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991))); *Man-D-Tec, Inc. v. Nylube Prods. Co., LLC*, No. CV-11-1573-PHX-GMS, 2012 WL 1831521, at *4 (D. Ariz. May 18, 2012) (collecting cases). HPS's suit-related conduct thus fails to establish that it has a substantial connection with this forum.

The general jurisdiction analysis fairs no better. HPS is not "at home" in Colorado and has few, if any, direct contacts with the state. HPS is a Delaware corporation with its principal place of business in Washington D.C. (*See* Am. Compl., ¶ 33.) As described above, Plaintiffs merely allege that HPS conducted a media campaign on behalf of Dominion, just as any public relations firm does. (*See id.* ¶¶ 4, 8, 84.) And the sources they cite to in which HPS acted on Dominion's behalf illustrate that this campaign was on a national scale, not a campaign targeted solely toward Colorado or its residents. (*Id.* ¶¶ 4 n.2, 84(c) n.100.) In other words, although Plaintiffs allege that HPS (and Dominion) "conducted substantial business in this judicial

district," (*id.* ¶ 15), the only allegations tying HPS to Colorado are those addressing HPS's alleged nationwide public relations campaign on behalf of two Colorado companies. These allegations thus do not even come close to establishing that HPS's general business contacts with Colorado are so continuous and systematic as to render it essentially at home in this state. *See Diamler AG*, 571 U.S. at 127.

Therefore, because HPS did not purposefully avail itself of the privileges of conducting activities within Colorado, exercising personal jurisdiction over HPS would violate its due process rights and offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. No amendment by Plaintiffs could cure this defect. Accordingly, this Court must dismiss HPS from this action with prejudice.

## II.   Plaintiffs Fail to State a Plausible Claim for Relief.

Even if this Court possessed personal jurisdiction over HPS, Plaintiffs' claims for relief against HPS—Counts I and IV—must be dismissed because the arguments in Dominion's Motion to Dismiss apply with equal force to HPS. As to the RICO claim, these arguments include that Plaintiffs fail to allege a sufficient RICO injury, any racketeering activity, an effect on interstate commerce, or a RICO conspiracy. (*See* ECF No. 40, at 7–17.) As to the civil conspiracy claim, these arguments include that 42 U.S.C. § 1985(3) does not apply to the alleged private conspiracy, that Plaintiffs fail to allege any unlawful overt acts, and that a corporate entity and its agents cannot conspire with themselves. (*Id.* at 26–28.) HPS adopts Dominion's arguments as its own and thus does not replicate them here.

The following provides additional reasons why these two claims should be dismissed. Under no circumstances do the specific factual allegations against HPS, even if assumed to be

true, plausibly suggest that HPS is liable under RICO or for civil conspiracy.

### a. Plaintiffs fail to sufficiently allege any racketeering activity or predicate acts undertaken by HPS required to assert a claim for violation of RICO.

Plaintiffs' RICO claim against HPS is patently absurd. It alleges that HPS somehow engaged in organized crime by "issu[ing] written threats to those speaking out about election integrity and security in numerous states beyond the borders of the State of Colorado" and that HPS did so outside of its role as Dominion's agent. (*See* Am. Compl., ¶ 104.) These allegations are false, conclusory, and conflate document preservation letters designed to assist defamation litigation and media interviews[3] with state suppression of speech. They must be rejected.

Specifically, Plaintiffs allege that HPS committed numerous predicate acts, including "extortion, witness intimidation, witness retaliation, witness tampering, and mail fraud." (*See id.* ¶ 105). The Amended Complaint, though, asserts that the alleged actions giving rise to these purported predicate acts are sending the document preservation letters and engaging in "Lawfare," or "Lawsuit Warfare," against anyone that speaks about anything negatively related to Dominion's possible role in election integrity and security. (*See id.* ¶¶ 1, 105.) As described above, HPS did not send the document preservation letters, and there are no allegations specifying what role, if any, HPS had in intimidating or threatening ***Plaintiffs*** through this purported "Lawfare." (*See, e.g.*, *id.* ¶ 103 (alleging that the RICO enterprise consisted of Dominion, "with the assistance and participation of non-party co-conspirator Clare Locke, and those unknown individuals working with them, all of whom constituted an association–in–fact

---

[3] Plaintiffs include at least one link to statements made by HPS on behalf of Dominion to news organizations regarding potential lawsuits. (*See id.* ¶ 4 n.2.) Notably, the interview makes no mention of any of the Plaintiffs.

enterprise ('the Dominion Enterprise')," but omitting HPS from the enterprise's definition).) Instead, Plaintiffs allege that HPS "amplified" Dominion's defamation lawsuits against non-parties through a "publicity campaign."  (*See id.* ¶ 8.)

In other words, not only are the alleged actions not predicate acts for the reasons stated in Dominion's Motion to Dismiss, (*see* ECF No. 40, at 9–13), but Plaintiffs even fail to sufficiently allege that HPS engaged in those alleged actions.  *See Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (noting that a failure to allege a predicate act requires dismissal of a RICO claim). HPS's so-called "publicity campaign" is not alleged to be conduct giving rise to a predicate act. And even if it was, there are no allegations that Plaintiffs self-regulated or censored their speech because of HPS's alleged campaign.  The Amended Complaint only ties Plaintiffs' alleged injuries to their receipt of document preservation letters.  (*See* Am. Compl., ¶¶ 16–28).

### b. Plaintiffs fail to sufficiently allege a RICO enterprise or a civil conspiracy involving two or more persons.

In addition to describing other reasons why Plaintiffs' RICO and civil conspiracy claims fail, Dominion's Motion to Dismiss explains why the purported enterprise does not meet RICO's distinctiveness requirement, *see, e.g.*, *Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir. 1987) (describing this requirement), or the civil conspiracy requirement that the conspiracy involve two or more persons, *see Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006).  These related arguments highlight specifically why HPS cannot be liable under these causes of action.

In the Amended Complaint, Plaintiffs allege an "association" or a "conspiracy" between a corporate defendant (Dominion) and its agents (Clare Locke and HPS) conducting Dominion's regular affairs.  (*See* Am. Compl., ¶¶ 4, 6, 8 (alleging that Clare Locke was "dispatched" by

Dominion to send these document preservation letters and that HPS developed a "well-orchestrated publicity campaign" on Dominion's behalf as "Dominion's Public Relations Firm").)  Although, as noted above, Plaintiffs allege that HPS acted as an independent entity, (*see id.* ¶ 103), the Amended Complaint fails to include a single allegation explaining how those actions went beyond the agency relationship.  *See, e.g.*, *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1379 (S.D. Fla. 2010) (concluding that by sending demand letters, a law firm defendant was "acting as an agent for its retail clients and therefore not a separate and independent entity" for RICO purposes); *see also* 16 Am. Jur. 2d Conspiracy § 58 (explaining that "a corporation cannot conspire with its agent when the agent is acting within the scope of their authority" and "not for any personal purpose of their own").  The specific allegations concerning HPS all relate to actions HPS took on Dominion's behalf.  (*See, e.g.*, Am. Compl., ¶ 4 n.2 (referring to Michael Steel, a partner at HPS, as "Dominion's spokesperson").)  Plaintiffs' assertion is but a conclusory allegation divorced from reality and falls well short of alleging an "association" or "conspiracy" between Dominion and HPS necessary to avoid dismissal of the RICO and civil conspiracy claims.

## III.   The Case Is Not a Justiciable Case or Controversy.

HPS also adopts the argument in Dominion's Motion to Dismiss that the case is not a justiciable case or controversy because Plaintiffs' claims are unripe and lack concreteness.  (*See* ECF No. 40, at 28–30.)  In fact, this case's justiciability is even more dubious as to HPS because Plaintiffs have not met their burden of establishing that they have suffered an injury in fact that is fairly traceable to HPS's conduct.

To avoid dismissal for lack of Article III standing, a plaintiff "must show injury in fact, a

causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision." *Faustin v. City, Cnty. of Denver, Colo.*, 268 F.3d 942, 947 (10th Cir. 2001). The second element of Article III standing specifically requires a causal connection between the injury and the defendant's conduct. *See Lujan*, 504 U.S. at 560–61.

As described above, Plaintiffs' alleged injuries purportedly stem from receiving document preservation letters, not from any of HPS's alleged conduct. There are simply no allegations that HPS's alleged "publicity campaign" injured Plaintiffs in any way. Plaintiffs did not buy Ring doorbells or allegedly experience emotional distress and mental anguish because HPS corrected misinformation regarding Dominion or publicized defamation lawsuits against non-parties. (*See* Am. Compl., ¶¶ 16–28.) Because Plaintiffs have not pleaded an injury fairly traceable to HPS's alleged conduct, they have failed to satisfy the elements of Article III standing.

## CONCLUSION

For the foregoing reasons, HPS respectfully requests that this Court dismiss this case in its entirety.

Dated: February 28, 2022

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: s/ *Stanley L. Garnett*
Stanley L. Garnett, Colo. Bar No. 12282
David B. Meschke, Colo. Bar No. 47728
Bridget C. DuPey, Colo. Bar No. 53958

By: s/ *Rodney Smolla*
Rodney Smolla

Attorneys for Defendant Hamilton Place Strategies, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 28th day of February, 2022, I electronically filed a true and correct copy of **HAMILTON PLACE STRATEGIES, LLC'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT** with the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                      */s Stanley L. Garnett* _____
                                                      Stanley L. Garnett